Appeal from Special Term, New York County.

Action by Maria J. Ventriniglia against David Eichner. From an order dismissing the complaint, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, Mc-LAUGHLIN, and DOWLING, JJ.

G. Arnold Moses, for appellant.

Arthur Furber, for respondent.

McLAUGHLIN, J. This action was brought by an owner of certain real estate to compel the surrender and cancellation of a tax lease issued upon the property by the comptroller of the city of New York upon the ground that the same was a cloud upon her title. The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, and then the plaintiff moved for judgment on the pleadings.

The trial of the issue raised by the demurrer could only be brought on as provided in section 977 of the Code of Civil Procedure. Notwithstanding the fact that the defendant had not served the notice of trial provided in the section, or asked for any affirmative relief, the court, nevertheless, assumed to dispose of the plaintiff's motion as though it were the trial of the demurrer, and made an order denying the motion and sustaining the demurrer, and directed judgment for the defendant, dismissing the complaint, with costs, unless within 10 days plaintiff paid the costs and served an amended complaint. The only motion before the court was one made by plaintiff for judgment in her favor, and only that motion should have been decided.

Besides, it would seem, under Sanders v. Parshall, 67 Hun, 105, 22 N. Y. Supp. 20, affirmed 142 N. Y. 679, 37 N. E. 825, that the complaint does state a cause of action; but that question must be determined on a trial of the issues raised by the demurrer, and for that reason we do not at this time pass upon it.

The order appealed from, therefore, is reversed, with $10 costs and disbursements to the appellant, and the plaintiff's motion for judgment on the pleadings denied, with $10 costs to the defendant. All concur.

---

HALL v. KANE et al.

(Supreme Court, Appellate Division, Second Department. May 6, 1910.)

1. WATERS AND WATER COURSES (§ 156*)—CONVEYANCES—TITLE OF GRANTOR.

Where lands conveyed were not visibly subject to an easement for the use of water in favor of another tenement, and no reservation of such right was made in the deed, a subsequent conveyance of such right by the same grantor passed nothing.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 156.*]

2. DEEDS (§ 84*)—RECORD—PLACE—STATUTES.

The provision in Act April 16, 1801 (Laws 1801, c. 155), that deeds "shall and may be recorded" in the office of the Secretary of State, is not mandatory, but is merely permissive as to lands in Orange county, as shown

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by another provision that conveyances of land in certain other counties specified shall be recorded in the clerk's office in the county, etc., and it has no application as if mandatory to deeds made before its enactment.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 84.*]

3. VENDOR AND PURCHASER (§ 233*)—BONA FIDE PURCHASER—PRIOR CONVEYANCES.

Where in 1803 a grantor conveyed land without excluding from the conveyance a water course or without limiting the use of the water thereon, a subsequent deed by the grantor of the right to the use of the water did not deprive the grantee of his riparian rights, though his deed was not recorded until after the grant of the water rights; the statute in force at the time not making recording mandatory.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 563–566; Dec. Dig. § 233.*]

4. DEEDS (§ 194*)—DELIVERY—PRESUMPTIONS.

A deed is presumptively delivered at its date.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 574–583; Dec. Dig. § 194.*]

5. WATERS AND WATER COURSES (§ 53*)—RIPARIAN RIGHTS—REASONABLE USE.

An owner of land entitled to riparian rights is entitled to a reasonable use of the stream, including the right to dam it, and the maintenance of a dam suitable to the stream and a proper use thereof will not be enjoined at the suit of a lower proprietor.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig § 45; Dec. Dig. § 53.*]

Appeal from Special Term, Orange County.

Action by Frank A. Hall against Michael N. Kane and another, as executors of George R. Conklin, deceased. From a judgment of dismissal, plaintiff appeals. Affirmed.

Argued before WOODWARD, JENKS, BURR, THOMAS, and RICH, JJ.

George R. Brewster, for appellant.

M. N. Kane, for respondents.

JENKS, J. This is an action for an injunction upon the maintenance of a dam built in 1906 by the defendant across a stream running through land occupied by him for the reason that it arrests the free flow of a stream from Mt. Basha Lake over that land to and over the plaintiff's land below, and distant four miles from the lake. The plaintiff has a factory on the land wherein he uses water power. The plaintiff contends that the defendant is deprived of the usual riparian rights perforce of a certain grant made to plaintiff's predecessors in 1811. The grantor was Peter Townsend, and the terms of that grant are:

"All that the right or privilege of using or drawing off the water from a certain pond called Mount Basha pond, situate in the town of Monroe, in the county of Orange, near the nail manufactory of the said Henry McFarlan and others, called the Monroe Works, for the purpose of carrying on the said works, in such quantity as would be sufficient for carrying on and working the furnace situate between said nail manufactory and the said pond, called Southfield Furnace, occupied and owned by the said Peter Townsend and others, and for which purpose said water is now used, and no further or greater quantity: Provided always, that the right so as aforesaid granted to the said Henry McFarlan, his heirs and assigns, of drawing off said water as aforesaid

shall cease at all times whenever the said furnace called the Southfield Furnace is in blast or making iron."

In 1893 this very grant was under consideration, when the General Term of this department said:

"The difference between the parties is this: The defendant insists that the grant was made for the use of the nail works only, and that the waters cannot be utilized for any other purpose. It is also claimed by the defendant that the action cannot be maintained because the new factory of the plaintiff is not upon the site of the old nail factory. Contrariwise the plaintiff claims that he is not restricted to the use of the water for a nail factory, but is entitled to use the same quantity of water for any purpose upon any part of his premises. The dispute must be settled by the terms of the grant and the law applicable thereto."

It was then decided that the limitation was a measure of quantity and not of purpose, and that, therefore, the plaintiff as grantee could use like quantity in his business. Hall v. Sterling Iron & Railway Co., 74 Hun, 10, 26 N. Y. Supp. 143, affirmed 148 N. Y. 432, 42 N. E. 1056.

That action, however, was against a different party, and I cannot find that an essential question in this case was either presented or involved. The defendant read in the evidence a deed, executed by the said Peter Townsend in 1803 to Charles Webb, whereby he conveyed 362 acres of land, which included virtually all of the land now occupied by this defendant. There is no contention that the plaintiff has any grant of these lands. I cannot find that the conveyance of 1803 makes the lands thereby conveyed in any way servient to the uninterrupted flow of water, or subjects them to any easement with respect to the water to be drawn from Mt. Basha Lake, or that the water course is excluded from the conveyance, or that in any way the use of any water thereon is limited therein or the use of the flowing water is in any way separated thereby from the land and the riparian rights. While the water could be the subject of a grant (Washburn on Easements, p. 10), Peter Townsend, after he conveyed the land in 1803, had no right without reservation to convey any right of clear flow in that land by a deed executed in 1811. Burr v. Mills, 21 Wend. 290. Such a right must have been reserved or visibly imposed on the premises at the time of the conveyance. Farnham on Water Rights, 2383. The point is made that the deed of 1803 was not recorded until many years subsequent to the grant of 1811. But it does not appear that there was any act in existence in 1803 that required the record of such deed. The statute of 1801, passed April 6th (Laws 1801, c. 155), invoked by the learned counsel for the appellant, provides that every deed, conveyance, or writing relating to the title or property of lands within this state and duly acknowledged "shall and may be recorded in the office of the secretary of this state." This expression is not necessarily mandatory, but may be permissive. Sutherland on Statutory Construction, §§ 460, 461, 462, et seq. That it is such as used in this statute is indicated. For section 4 thereof provides that every deed, conveyance, or writing, whereby the right or title to any lands or tenements situate in the several counties of Ontario, Steuben, Tioga, Herkimer, Oneida, Chenango and Otsego, "shall be

recorded, if the same be not already done," in the clerk's office in the counties, and thereupon provides:

"And that every deed and conveyance made and executed after the said first day of February, whereby any of the said lands may be any way affected in law or equity, shall be adjudged fraudulent and void against any subsequent bona fide purchaser or mortgagee for valuable consideration, unless the same be recorded as by this act is directed, before the recording the deed or conveyance under which such subsequent purchaser or mortgagee shall claim."

This provision is continuous of the act of 1798 (Laws 1798, c. 78) that relates to these counties. This act, then, so far as the county of Orange is concerned, was not mandatory, and has no application as if mandatory to deeds made before its enactment. Varick v. Briggs, 22 Wend. 543; Beal v. Miller, 1 Hun, 390; Felix v. Devlin, 90 App. Div. 103, 86 N. Y. Supp. 12. The deed is presumed to have been delivered at its date. Biglow v. Biglow, 39 App. Div. 103, 56 N. Y. Supp. 794; People v. Snyder, 41 N. Y. 397. Aside from any rights which the plaintiff may lay claim to by grant in derogation of the defendant's riparian rights, I fail to see that the defendant has violated any of the natural rights of the plaintiff. He was entitled to a reasonable use of the stream, which included the right to dam it. Strobel v. Kerr Salt Co., 164 N. Y. 303–320, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643; Pierson v. Speyer, 178 N. Y. 270, 70 N. E. 799, 102 Am. St. Rep. 499; Henderson Estate Co. v. Carroll Electric Light Co., 113 App. Div. 775, 99 N. Y. Supp. 365, affirmed 189 N. Y. 531, 82 N. E. 1127. The learned Special Term has found that the defendant's dam was suitable to the stream, and the use of the stream thereby made was proper and reasonable, and I see no reason to disturb that finding. The dam is built on a watershed below and outside of the dam at the lake. Defendant's lake covers about 11 acres, and that watershed above it and below that dam consists of about 117 acres. The watershed above the dam on Mt. Basha Lake is about 2,000 acres and the lake covers about 320 acres. There is proof that the defendant's lake filled at the time the gate of the Mt. Basha dam was closed in a much shorter time than the Mt. Basha Lake was filled.

The judgment is affirmed, with costs. All concur.

---

### In re THAW.

(Supreme Court, Appellate Division, Second Department. April 29, 1910.)

1. INSANE PERSONS (§ 86*)—COMMITMENT IN STATE INSANE HOSPITAL—TRANSFERS—POWER OF COURT.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 86.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes